IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICIA A. JOHNSTON,

               Plaintiff,

     vs.                                 Civil Action 2:13-cv-368
                                        Judge Graham
                                        Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

## REPORT AND RECOMMENDATION

### I.  Background

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is now before the Court on *Plaintiff's, Patricia A. Johnston, Statement of Errors* ("*Statement of Errors*"), Doc. No. 14, the Commissioner's *Opposition to Plaintiff's Statement of Errors*, Doc. No. 22, and *Plaintiff's Reply*, Doc. No. 23.

    Plaintiff Patricia A. Johnston filed her applications for benefits in February 2009, alleging that she has been disabled since April 1, 2003.  *PAGEID* 186, 193.  The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on February 27, 2012, at which plaintiff, represented by counsel, appeared and testified, as did

Julie Svec, who testified as a vocational expert. *PAGEID* 92. In a decision dated March 22, 2012, the administrative law judge concluded that plaintiff was not disabled from April 1, 2003, through the date of the administrative decision. *PAGEID* 79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 1, 2013. *PAGEID* 54.

Plaintiff was 45 years of age on the date of the administrative law judge's decision. *See PAGEID* 79, 186. Plaintiff has a limited education, is able to communicate in English, and has past relevant work as a cook, factory laborer, and cashier. *PAGEID* 77-78. Plaintiff was last insured for disability insurance purposes on September 30, 2009. *PAGEID* 66. She has not engaged in substantial gainful activity since April 1, 2003, her alleged disability onset date. *Id.*

## II. Administrative Hearing

Plaintiff testified at the administrative hearing that she stopped working in 2007 because she "couldn't handle standing any longer." *PAGEID* 96. She is able to lift 20 pounds, sit for about a half an hour at a time, and stand for 20 minutes at a time. *Id.* Plaintiff can use her hands, but she has trouble lifting her arms because of nerve damage in her neck. *PAGEID* 97. Although she underwent surgery on her right shoulder she is able to lift her arm to only waist level because of shooting pain in her arm and neck. *PAGEID* 100-01. Plaintiff also has severe leg pain, neck problems, and lower back problems. She rated her back pain at 8/10 on a typical day.

2

*PAGEID* 101-02.  Pain medications help and cause no side effects. *PAGEID* 98.  Plaintiff also underwent surgery on her right ankle, which she described as "still a little tender." *PAGEID* 100.

Plaintiff also testified to depression. She has taken medication and treated with a counselor, both of which helped her depression. *PAGEID* 99.  She has trouble concentrating and remembering such things as names, addresses and telephone numbers. *PAGEID* 103.

Plaintiff lives alone and is able to cook, perform some household chores, with breaks, and wash dishes if she can sit down. *PAGEID* 97-98.  On a typical day, plaintiff spends most of her time on the couch watching television. *PAGEID* 101, 103.  She is able to drive, but rarely does so. *PAGEID* 98.  She goes grocery shopping once a month for approximately 20 minutes at a time. *Id.*

Plaintiff testified that she suffers from asthma, although the condition does not limit her ability to work. *PAGEID* 99.  She believes that she could perform a job that does not require lifting and which would allow her to sit most of the time and get up when necessary to stretch her legs. *PAGEID* 104.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity eventually determined by the administrative law judge. *PAGEID* 105-07.  According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a cashier, cook, or factory laborer, but could perform such jobs as document preparer, addresser, and surveillance system monitor. *Id.*

3

## III.  Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease, fibromyalgia syndrome, depression, panic disorder with agoraphobia, sciatica, history of asthma, and obesity.  *PAGEID* 66.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is further limited to work involving only simple, routine, and repetitive tasks; no strict time pressures or production quotas; no unpredictable changes in work routine; no more than occasional interactions with coworkers, supervisors, and the public; no more than two hours of standing or walking; no more than frequent stooping or crouching; no climbing of ladders, ropes, or scaffolds; no hazards; no concentrated exposure to pulmonary irritants; and no overhead reaching with the right arm.

*PAGEID* 67-69.  Although this residual functional capacity would preclude plaintiff's past relevant work as a cook, factory laborer, and cashier, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such jobs as document preparer, addresser, and surveillance system monitor.  *PAGEID* 77-79.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 1, 2003, through the date of the administrative law judge's decision.  *PAGEID* 79.

4

## IV.  Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

Plaintiff argues, first, that the administrative law judge erred in assigning "minimal weight" to the opinion of Nicole A. Leisgang, Psy.D. *Statement of Errors*, pp. 6-9.  Plaintiff was

5

psychologically evaluated by Dr. Leisgang on September 30, 2009. *PAGEID* 512-18. Plaintiff reported that she "was seeking disability compensation due to recurrent episodes of depression during which time 'I feel worthless . . . I can't take care of myself . . . I don't trust anybody . . . I don't like crowds . . . I'm a nervous wreck.'" *Id.* Plaintiff reported being anxious and depressed, having recurrent episodes of depression and panic attacks, and avoiding people. *Id.* Plaintiff "endorsed a sense of impending doom, discomfort with crowds and strangers, difficulty trusting others, a strong and noticeable startle response, and feelings of hopelessness and helplessness." *Id.* Plaintiff also reporting gaining 20 pounds in the prior six months. *PAGEID* 513.

Dr. Leisgang described plaintiff as anxious, noting that plaintiff engaged in only limited eye contact and shuffled her feet. Dr. Leisgang also characterized plaintiff as rather depressed, displaying a restricted affect and a downcast facial expression, spoke in a monotone voice, and cried throughout the evaluation. *PAGEID* 514. Dr. Leisgang assigned a global assessment of functioning score ("GAF") of 45[1] and diagnosed major depressive disorder, recurrent, severe, without psychotic features, and a panic disorder without agoraphobia.

---

[1] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . .

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012).

*PAGEID* 515-16.  According to Dr. Leisgang, plaintiff was "markedly impaired by her emotional difficulty" in her ability to relate to others, including fellow workers and supervisors, and in her ability to withstand the stress and pressure associated with day to day work activity.  *PAGEID* 516-17.  Plaintiff was "moderately impaired by her emotional difficulty" in her ability to understand, remember, and follow instructions and in her ability to maintain attention, concentration, persistence, and pace.  *Id*.  If plaintiff were granted disability benefits, Dr. Leisgang believed that plaintiff would be able to manage her funds.  *PAGEID* 517.

An administrative law judge is required to evaluate every medical opinion, regardless of its source.  20 C.F.R. §§ 404. 1527(c); 416.927(c).  However, not every medical opinion is treated equally; the Commissioner's regulations describe three classifications of acceptable medical opinions: (1) nonexamining sources;[2] (2) nontreating sources (or examining sources); and (3) treating sources.[3]  As a one-time consultative psychological examiner, Dr. Leisgang is properly classified as a nontreating source.  *See* 20 C.F.R. §§ 404. 1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not

---

[2] A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case."  20 C.F.R. §§ 404.1502, 416.902.
[3] A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  *Id*.

have, or did not have, an ongoing treatment relationship with [the claimant].").

The opinion of a treating source is entitled to the most weight; if an administrative law judge does not give "controlling weight" to the medical opinion of a treating source, he must provide "good reasons" for discounting the opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). "However, this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)(emphasis in original)). In considering the opinion of a nontreating source, such as Dr. Leisgang, "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined'[the claimant]." *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)). *See also Smith*, 482 F.3d at 875. In determining how much weight to give the opinion of a nontreating source, an administrative law judge should still "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

In the case presently before the Court, the administrative law judge expressly considered Dr. Leisgang's opinion, but assigned

8

"minimal weight" to that opinion:

> Much as with the psychological evaluation conducted for the county application, the claimant was somewhat less than entirely candid with the psychological consultative examiner, although the claimant did endorse a more representative scope of daily activities. The claimant was assessed with relatively restrictive limitations (including marked limitation in relating to others and withstanding the stress and pressure of day-to-day work activity and moderate limitation in understanding, remembering, and carrying out instructions and maintaining attention, concentration, persistence, and pace) and a low GAF score of 45. However, I note that this was based on the claimant's own reported symptomatology. In terms of functioning, the claimant's GAF score was surmised to fall within the 51-60 range. Curiously, despite finding at least moderate limitation in all four work-related activities, the claimant was thought to be capable of managing her own funds. Lastly, I note that the brief mental health treatment that the claimant did receive, which consisted largely of medication therapy, was found to be effective. (Exs. 10F, 24F). Much of the claimant's symptomatology was occasioned by situational stressors, such as the breakdown of her marriage, the death of a friend, or the need to euthanize a pet dog. Overall, the psychological consultative examiner's opinion relies too heavily and uncritically on the claimant's own reported symptoms. This is particularly so in light of the minimal observed symptomatology. Accordingly, I give this opinion minimal weight.

*PAGEID* 76 (citations omitted).

The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Leisgang's opinion and the reasons for that assessment. It is also apparent that the administrative law judge considered the appropriate factors in evaluating Dr. Leisgang's opinion. Furthermore, the administrative law judge's reasons for assigning "minimal weight" to Dr. Leisgang's opinion are supported by substantial evidence. As the administrative law judge found, Dr. Leisgang's GAF assessment relied, at least in

part, on plaintiff's own reported symptomatology, *see PAGEID* 515 ("In terms of symptoms, she appeared to be anxious and rather depressed. She described herself as continually anxious and depressed and alluded to worry, crying, withdrawal, anhedonia, decreased attention and concentration skills, suicidal ideation, panic attacks, avoidant behavior, and symptomatology associated with PTSD. As such, her symptom severity must be rated as falling between 41 and 50."), 515-16 ("In terms of functioning, she spends most of her time at home. She has one friend and sees her only 'every once in a while.' She cares for her home and pets although her parents assist her with meal preparation. She does have hobbies. From a functional standpoint, her GAF must be rated as falling between 51 and 60."). Moreover, there is substantial evidence to support the administrative law judge's conclusion that plaintiff "was somewhat less than entirely candid with the psychological consultative examiner." *PAGEID* 76. As noted by the administrative law judge, *see PAGEID* 75, some of plaintiff's accounts of how she injured herself, including moving furniture, *PAGEID* 351 (January 2006), being knocked over by a dog (and walking two miles a day), *PAGEID* 332 (September 2008), tripping over a dog in her yard, *PAGEID* 759 (November 2009), and "stepp[ing] in a hole," *PAGEID* 833 (March 2011), and her testimony at the administrative hearing, *see PAGEID* 97-98 (testimony that plaintiff is able to cook), all suggest that plaintiff engaged in a broader range of daily activities than she reported to Dr. Leisgang. *See PAGEID* 513 (indicating, *inter alia*, that plaintiff spends most of her time at home and is able to assist

10

with household chores, but that her parents help with meal
preparation).

Although plaintiff argues that the "factors suggest Dr.
Leisgang's report should have been granted greater weight," *Statement
of Errors*, p. 9, this Court will not reevaluate the factors where, as
here, the administrative law judge applied the proper standards and
his decision is supported by substantial evidence. *See Richardson v.
Perales*, 402 U.S. 389.

Plaintiff also contends that the administrative law judge erred
in assigning "minimal weight" to the opinion of Terry R. Hayes, Ph.D.
*Statement of Errors*, pp. 10-11.  Plaintiff was interviewed by Sabrina
D. Morris, PCC-S, on September 9, 2009, and Ms. Morris and Dr. Hayes
completed a mental functional capacity assessment on that same date.
*PAGEID* 568-73.  Dr. Hayes described plaintiff as disheveled and
displaying poor eye contact and noted that plaintiff seemed angry and
withdrawn during the interview.  *PAGEID* 571.  Plaintiff endorsed
symptoms of depression: "feelings of worthlessness; feelings of should
not even be here to take up space to breathe; prays to die during her
sleep; recurrent thoughts of death; increased irritability; sadness
more days than not; inability to complete daily tasks; and insomnia."
*PAGEID* 572.  Plaintiff also endorsed symptoms of social anxiety: "[']I
don't trust people other than my parents[']; has panic attacks in
crowds; gets nervous around people; avoids leaving her home for fear
of having panic attacks; heart races; dizziness; tightness in her
chest; and believes she is going to die."  *Id.*  Dr. Hayes noted that

11

plaintiff's short-term memory appeared to be impaired and that plaintiff had poor concentration, insight, judgment and decision-making skills. *PAGEID* 571-72. Dr. Hayes assigned a GAF of 51 and diagnosed major depressive disorder, recurrent, severe, without psychotic features; panic disorder with agoraphobia; and personality disorder, not otherwise specified. *Id.* According to Dr. Hayes, plaintiff was markedly limited in 16 out of 20 areas of functioning related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation; plaintiff was moderately limited in the remaining four categories of functioning. *PAGEID* 568.

As an expert who examined plaintiff on a single occasion, Dr. Hayes is also properly classified as a nontreating source. *See* 20 C.F.R. §§ 404. 1502, 416.902. As discussed *supra*, an administrative law judge who evaluates the opinion of a nontreating source must "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

In the case presently before the Court, the administrative law judge expressly considered Dr. Hayes' opinion, but assigned it "no more than minimal weight:"

> The claimant also underwent a psychological evaluation in connection with her application for county disability benefits and which led to the preparation of a mental

12

> functional capacity assessment by that evaluator.  This is
> a one-time evaluator and is not a treating source; as such,
> the opinion cannot be afforded controlling weight under
> Social Security regulations.  While the mental functional
> capacity assessment found marked impairment in nearly all
> areas (and in those few areas where the claimant was not
> found to be markedly impaired, she was found to be
> moderately impaired), the claimant's GAF score was assessed
> at 51, which corresponds to only moderate symptoms.
> Furthermore, these limitations are based solely on the
> claimant's subjective reports and do not conform to the
> claimant's reported daily activities or lack of substantive
> mental health treatment.  For instance, the claimant is
> listed as markedly impaired in nearly all areas, however,
> the claimant reports living alone (although I note that the
> claimant led this opinion source to believe that she was
> taken care of by her parents).  In light of these
> shortcomings, I find that this opinion can be given no more
> than minimal weight.

*PAGEID 76* (citations omitted).  The administrative law judge provided

specific reasons for assigning "no more than minimal weight" to Dr.

Hayes's opinion and it is apparent that the administrative law judge

considered the appropriate factors.  Under these circumstances, a

formulaic recitation of factors is not required.  *Cf. Friend v. Comm'r*

*of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's

opinion permits the claimant and a reviewing court a clear

understanding of the reasons for the weight given a treating

physician's opinion, strict compliance with the rule may sometimes be

excused.").  Further, the administrative law judge's reasons for

assigning "no more than minimal weight" to Dr. Hayes's opinion are

supported by substantial evidence.  Significantly, Dr. Hayes based his

GAF of 51 on plaintiff's subjective reports, *see PAGEID* 572, and, as

noted by the administrative law judge, *see PAGEID* 75-76, plaintiff

made inconsistent statements to Dr. Hayes regarding her activities of

13

daily living. *Compare, e.g., PAGEID* 571 (reporting that she does not prepare her own meals or do dishes), *with PAGEID* 97-98 (plaintiff's testimony that she is able to cook and do dishes).

It is well-settled that the Commissioner's decision, if supported by substantial evidence, must be affirmed even if the plaintiff's position is also supported by substantial evidence. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Because the administrative law judge applied the correct standards in his evaluation of Dr. Hayes's opinion, and because substantial evidence supports his findings in that regard, the Court finds no error in that evaluation.

Finally, plaintiff argues that the administrative law judge erred in omitting from plaintiff's severe impairments a right rotator cuff tear and a right ankle fracture. *Statement of Errors*, p. 12. "Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)). "The claimant bears the burden of proof through the first four steps of the inquiry, at which point the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . .'" *Id*. (quoting *Jones*, 336 F.3d at 474). In the case presently before the Court, plaintiff argues that the administrative law judge erred at step two by not including a right rotator cuff tear

14

and right ankle fracture in the list of plaintiff's severe
impairments. *Statement of Errors*, pp. 12-13. The finding of a severe
impairment at step two of the sequential analysis is, however, a
threshold determination; the finding of a single severe impairment is
sufficient and will require the continuation of the sequential
analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d
240, 244 (6th Cir. 1987). The administrative law judge found at step
two of the sequential analysis that plaintiff suffers severe
impairments, which consist of degenerative disc disease, fibromyalgia
syndrome, depression, panic disorder with agoraphobia, sciatica,
history of asthma, and obesity. *PAGEID* 66. The administrative law
judge's failure to find additional severe impairments at step two is
"legally irrelevant," *see McGlothin v. Comm'r of Soc. Sec.*, 299 F.
App'x 516, 522 (6th Cir. 2008), so long as the administrative law
judge continued the sequential analysis and considered plaintiff's
severe and non-severe impairments in determining plaintiff's residual
functional capacity. *See id.; O'Neill v. Comm'r of Soc. Sec.*, No.
1:11-cv-1181, 2013 WL 1436648, at *5 (W.D. Mich. Apr. 9, 2013); *Dodson
v. Comm'r of Soc. Sec.*, No. 1:12-cv-109, 2013 WL 4014715, at *2 (E.D.
Tenn. Aug. 6, 2013).

Plaintiff acknowledges that the administrative law judge found
severe impairments and that, in determining plaintiff's residual
functional capacity, he found "limitations in the use of the right
shoulder (no overhead reaching), and the lower extremities (limited to
no more than two hours of standing or walking)." *Statement of Errors*,

15

p. 12.  Plaintiff argues, however, that the administrative law judge did not expressly consider the right rotator cuff tear and right ankle fracture in determining plaintiff's residual functional capacity. Specifically, plaintiff argues that the administrative law judge's statement that plaintiff "'recuperated well from these interventions [physical therapy for her ankle and surgery for her shoulder] and they have resolved the acute injuries that accounted for the claimant's shoulder and ankle pain[,]'" combined with the finding of non-severity of these impairments, "suggests that [the administrative law judge] did not consider these impairments as limiting within his RFC analysis." *Statement of Errors*, pp. 12-13. Plaintiff's arguments in this regard are not persuasive.

The administrative law judge found that plaintiff suffers from severe impairments and, continuing the sequential analysis, considered plaintiff's severe and non-severe impairments in determining plaintiff's residual functional capacity. *See PAGEID* 73.  Plaintiff's arguments to the contrary notwithstanding, the administrative law judge's acknowledgement that plaintiff "underwent physical therapy for her ankle and shoulder as well as a rotator cuff repair surgery" and his statement that plaintiff "recuperated well from these interventions and they have resolved the acute injuries that accounted for the claimant's shoulder and ankle pain," *id*., confirm that these impairments were considered by the administrative law judge in determining plaintiff's residual functional capacity.  Accordingly, the administrative law judge's failure to include the right rotator

16

cuff tear and the right ankle fracture in the list of severe
impairments is "legally irrelevant."  *See McGlothin*, 299 F. App'x at
522; *O'Neill*, 2013 WL 1436648 at *5; *Dodson*, 2013 WL 4014715 at *2.
Furthermore, to the extent that plaintiff disagrees with the
administrative law judge's residual functional capacity assessment
and, specifically, the limitations incorporated in that assessment in
connection with the right rotator cuff tear and right ankle fracture,
plaintiff does not argue that the administrative law judge's
determination lacks substantial support in the record. Similarly,
plaintiff has not pointed to any evidence of greater limitations posed
by these impairments than those found by the administrative law judge.

In short, the Court concludes that the administrative law judge
applied all proper standards and that his decision is supported by
substantial evidence.  It is therefore **RECOMMENDED** that the decision
of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report
and Recommendation*, that party may, within fourteen (14) days, file
and serve on all parties objections to the *Report and Recommendation*,
specifically designating this *Report and Recommendation*, and the part
thereof in question, as well as the basis for objection thereto.  28
U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections
must be filed within fourteen (14) days after being served with a copy
thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to
the *Report and Recommendation* will result in a waiver of the right to

17

*de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


December 26, 2013                                    *s/Norah McCann King*
                                                        Norah M<sup>c</sup>Cann King
                                            United States Magistrate Judge

18